IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREY BRIDGES, | ) | CASE NO. 1:15 CV 2556 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| BRIGHAM SLOAN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    A.    Underlying facts, conviction, and sentence . . . . . . . . . . . . . . . . . . . . . . -4-
    B.    Delayed Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
         1.    Ohio Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
         2.    The Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
    C.    Ohio App. R. 26 application to reopen appeal . . . . . . . . . . . . . . . . . . . . -17-
         1.    Ohio Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
         2.    The Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
    D.    Petition for post-conviction relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
         1.    Ohio Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
    E.    Successive post-conviction petition, Crim. R. 33 motion for new trial, and
         consolidated appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
         1.    Successive post-conviction petition . . . . . . . . . . . . . . . . . . . . . -22-
         2.    Findings of fact and conclusions of law . . . . . . . . . . . . . . . . . . . -23-
             a.    Ohio Court of Appeals . . . . . . . . . . . . . . . . . . . . . . -24-
         3.    Crim. R. 33 motion for a new trial . . . . . . . . . . . . . . . . . . . . . . -25-
             a.    Ohio Court of Appeals . . . . . . . . . . . . . . . . . . . . . . -25-
         4.    Consolidated appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
             a.    Ohio Court of Appeals . . . . . . . . . . . . . . . . . . . . . . -26-
             b.    The Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . -27-
    F.    Delayed motion for a new trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
    G.    Motion to vacate judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

|   | 1. | Ohio Court of Appeals | -31- |
|   | 2. | The Supreme Court of Ohio | -33- |
| H. | | Motion for leave with memorandum in support to "correct err 2903.02(A) conviction" | -33- |
|   | 1. | Ohio Court of Appeals | -33- |
| I. | | Petition for writ of habeas corpus | -34- |

Analysis ........................................................ -37-
| A. | | Preliminary observations | -37- |
| B. | | Applicable law | -38- |
|   | 1. | AEDPA review | -38- |
|   |   | a. "Contrary to" or "unreasonable application of" clearly established federal law | -39- |
|   |   | b. "Unreasonable determination" of the facts | -41- |
|   | 2. | Procedural default | -42- |
|   | 3. | Noncognizable claims | -45- |
|   | 4. | Ineffective assistance of appellate counsel | -47- |
| C. | | Recommendation on grounds asserted | -49- |
|   | 1. | Procedural default | -50- |
|   |   | a. Ground One | -50- |
|   |   | b. Ground Four | -55- |
|   |   | c. Grounds Five, Six, Seven, and Nine | -58- |
|   |   | d. Ground Eleven | -59- |
|   |   | e. Actual innocence | -66- |
|   | 2. | Non-cognizable claims | -69- |
|   |   | a. Grounds Eight and Twelve | -69- |
|   |   | b. Ground Ten | -70- |
|   |   | c. Ground Thirteen | -70- |
|   | 3. | Merits review | -71- |
|   |   | a. Ground One | -71- |
|   |   | b. Grounds Two and Three | -72- |
|   |   | c. Ground 4(a)(1), 4(a)(6),4(a)(7), 4(a)(8), 4(c), and 4(d) | -75- |
|   |   | d. Ground Four 4(a)(2) - 4(a)(5) | -76- |

Conclusion ...................................................... -77-

## Introduction

Before me[1] is the petition of Andrey Bridges for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Bridges was convicted by a Cuyahoga County Court of Common Pleas jury in 2013 of murder, tampering with evidence, felonious assault, and abuse of a corpse[3] and is serving 18 years to life. He is currently incarcerated at the Lake Erie Correctional Institution in Conneaut, Ohio.[4]

In his petition, Bridges raises thirteen grounds for habeas relief.[5] The State has filed a return of the writ arguing that the petition should be denied or dismissed because the counts are either without merit, procedurally defaulted, or non-cognizable.[6] Bridges has filed a traverse.[7]

For the reasons that follow, I recommend Bridges's petition be dismissed in part and denied in part.

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Jack Zouhary by non-document order dated December 28, 2015.

[2] ECF No. 1.

[3] ECF No. 25, Attachment 1 at 16.

[4] http://www.drc.state.oh.us/OffenderSearch

[5] ECF No. 1.

[6] ECF No. 25.

[7] ECF No. 33.

## Facts

### A.    Underlying facts, conviction, and sentence

The facts that follow come from the decision of the appeals court.[8]

In May 2013, Bridges was indicted on six counts: aggravated murder; murder;

felonious assault; kidnapping; tampering with evidence; and abuse of a corpse.[9]  He

pleaded not guilty to all the charges, and the case proceeded to a trial by jury.[10]

In April of 2013, the body of Carl Acoff, Jr., was found in a pond located behind

an apartment located at 7168 McKenzie Road in Olmsted Township.[11]   Jeffrey Bland,

who lived in the apartment, noticed something floating in the pond the day before the

body was found.[12] He testified that it looked like clothing, but the next day the object was

closer to shore and the object then looked like a mannequin because he could see legs.[13]

Bland  called his supervisor, Paul Schmidt, to come over and look at it.[14]  After Schmidt

---

[8]  Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[9] ECF No. 25, Attachment 1 at 88.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 89.

[14] *Id.*

arrived, Bland threw a stick at the object, causing oils to come out of the crotch area.[15]  At that point, Bland and Schmidt called the police.[16]

Bland had been living at the apartment since January or February 2013, but the apartment was actually leased by Jason Quinones.[17]  Although Quinones kept all his furniture and belongings at the apartment, he lived with his girlfriend, Irene, in Columbia Station.[18]

Police and special dive teams recovered Acoff's body from the pond.[19]  Acoff's body had two black and orange ropes tied around it.[20]  One rope had a metal pipe attached and the other had a rock or a "cinder block" tied to it.[21]

Dr. Andrea Wiens, an expert in forensic pathology, performed the autopsy on Acoff's body.[22]  Dr. Wiens testified that Acoff's body could have been placed in the pond anytime between December 2012 and March 2013.[23]  The cause of death was homicidal

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 89-90.

[21] *Id.* at 90.

[22] *Id.*

[23] *Id.*

violence with hyoid fracture and multiple sharp force injuries of skin, soft tissues, and viscera.[24]

When Acoff's body was pulled from the pond, he was not wearing clothing from his waist down.[25] He was wearing a black jacket, a pink tank top, and three bras; one of them had "stuffing" inside of it.[26] Relatives testified that they were aware that Acoff was dressing feminine and that he was prostituting himself on a social website called Photobucket.[27]

The day after the discovery of Acoff's body, police found a piece of mail on the ground near the mailbox of 7168 McKenzie Road.[28] The mail was from MetroHealth and addresses to Bridges at that address.[29] Police obtained a warrant to open the mail; it was a bill from MetroHealth for treatment Bridges had received at the hospital on January 6, 2013.[30]

---

[24] *Id.*

[25] *Id.* at 91.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 92.

During the investigation, neighbors stated that a taxi cab had "come and gone" to the apartment.[31]  Police contacted cab companies in the Cleveland area to determine if any had been dispatched to McKenzie Road.[32]  Timothy Lewis, general manager of Ace Taxi Service, found through Ace's GPS tracking system that one of Ace's cabs had been to McKenzie Road twice the morning of January 5, 2013.[33]  He was also able to recover the telephone request information.[34]  Ace had a call requesting service from Acoff's home address of 911 Rondell Road in Cleveland, Ohio, and they were looking to be delivered to 7168 McKenzie Road in Olmstead Township.[35]  The request came from Bridges's cell phone.[36]

Based on the GPS tracking system, Lewis determined that the Ace taxi arrived at 7168 McKenzie Road at 9:20 a.m. the morning of January 5, 2013, and then drove to a location nearby on Cook Road, stayed for no more than a couple of minutes, and was back at the destination about ten minutes later.[37]

------

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 93.

-7-

Lewis identified the three calls made from the Bridges's phone on the morning of January 5, 2013, which were played in court.[38] The first call requested service from 911 Rondel Avenue to 7168 McKenzie Road, for one passenger named "Shea." In the second call, the caller wanted to know when the taxi would arrive at 911 Rondel Avenue.[39] In the third call, made after the taxi arrived at 7168 McKenzie Road, the caller wanted to know again what the fare was from Rondel Avenue to McKenzie Road.[40]

The taxi driver, Abdifatah Mohamoud, testified that he picked up one person on Rondell Avenue on January 5, 2013; he was not sure if the person was a man or a woman.[41] He testified that when he arrived at the McKenzie Road address, he picked up a man and took the two of them to a convenience store to get change and then the man who had been waiting at the McKenzie Road address paid the fare with cash.[42]

Mohammad positively identified Acoff (dressed as a woman) from a photo array as the person he picked up from Rondell Avenue.[43] He also identified Bridges from a photo array as the man who paid for the cab fare.[44]

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at 93-94.

[43] *Id.* at 94.

[44] *Id.*

Jason Quinones testified that Bridges moved into his apartment on McKenzie Avenue in July of 2012.[45]  Since Quinones was at his girlfriend's residence all the time, he allowed Bridges to live at the McKenzie Avenue apartment and made him pay the electric and gas bills, but not rent.[46]  He confirmed that Bridges lived in the apartment until January 2013.[47]  Quinones said that he would still go to his apartment to get his mail, pay bills, and check on his dog, but he was mostly at Irene's.[48]

After learning that a body had been found in the pond behind his apartment, Quinones went to the police and told them that he might know something about the murder.[49]

Quinones stated that on January 5, 2013, he stopped by his apartment with a friend, Bill King, to get money from Bridges for the gas and electric bills.[50]  When Quinones pulled into the driveway, Bridges was standing in the front yard, right next to the driveway, with a fire going in Quinones's "fire ring."[51]  Quinones wondered what Bridges was doing standing outside in the "freezing cold with a T-shirt and a fire going."  He

---

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at 95.

[51] *Id.*

stated that he could see that Bridges was burning carpet padding and "a little bit of jean material."[52]

Quinones said that Bridges "eyes looked crazy," and his hand was "gushing blood everywhere."[53]  Quinones identified a cell phone photo taken by King in that morning of Bridges standing by the fire ring in his T-shirt.[54]

Quinones tried to go in his apartment, but Bridges didn't want him inside telling him that "something had happened, and he would take care of it."[55]  Bridges asked Quinones to leave, but he went inside the apartment anyway.[56]  Quinones testified that blood was "all the way up the steps," and that the door had been kicked in.[57]  Quinones saw a "heater type thing" that had blood all over it.[58]  The table was flipped and there was blood all over the kitchen floor and counters.[59]

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 96.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

Quinones asked Bridges what happened and Bridges gave him "three different answers real fast."[60]  Quinones stated that he was so mad at that point that he told Bridges to clean up the mess and move out of the apartment.[61]

Quinones noticed that day that one of his rugs was missing, and later learned that a bunch of stuff was missing from his apartment including his bed (including the comforter, sheets, pillow, and pillow cases), decorative towels from his bathroom, rugs, a heater, and a door stop to keep the cold air out.[62]

Before Quinones left, Bridges pulled a couple hundred dollar bills saturated with blood out of his pocket and paid the money that he owed him.[63]

Quinones went over to his apartment the day after because he knew that Bridges had left and he thought it had been "a little fishy because of what [he] had walked into."[64] Quinones said that there was snow on the ground and that he saw blood drops and footprints on a trail to the pond.[65] He believed that the footprints and blood was from Bridges.[66]  Bridges later told Quinones on the phone that "somebody must have killed a

---

[60] *Id.*

[61] *Id.*

[62] *Id.* at 96-97.

[63] *Id.* at 97.

[64] *Id.* at 97-98.

[65] *Id.* at 98.

[66] *Id.*

deer in the backyard because there was blood everywhere."[67]  Quinones never called the police because he did not think that it was as serious "as it ended up being."  Bridges even told Quinones that he was arrested for felonious assault in connection with the incident.[68]

Christine Ross, a senior computer analyst for the State of Ohio Bureau of Criminal Investigations testified that Olmsted Falls Police contacted her to analyze twelve cell phone numbers associated with the following individuals: Carl Acoff; Andrey Bridges; Anthony Miller; Jason Quinones; and Jeffrey Bland.[69]

Ross found that several calls were made between Acoff and Bridges on January 5, 2013.[70]  None of the other persons had contact with Acoff during that time.[71]  The last call made or received from Acoff's cell phone was on January 5, 2013, a call that Acoff made to a "440 number" at 12:20 p.m. and it lasted for five seconds.[72]

Ross also testified that Bridges's cell phone was in the same tower location as Acoff during the relevant time frame.[73]

---

[67] Id.

[68] Id.

[69] Id. at 101.

[70] Id.

[71] Id. at 102.

[72] Id.

[73] Id.

When the police interviewed Bridges, he originally implicated Quinones and King.[74] He told police that it was Quinones and King who wanted the prostitute and gave him the money to pay for the taxicab.[75]  He further stated that he saw King with the knife, but did not see anything else.[76] Bridges stated that he cut his finger when he was making dinner for his girlfriend.[77]  But, he later retracted his statement, although it was true, because he feared for the safety of his children and family.[78]

The evidence that was collected at the scene was processed by trace evidence and DNA experts working in the Cuyahoga County medical examiner's office.[79]  These experts testified that the rope that was found on the body matched the rope found in the garage.[80]  These experts also determined that most of the blood samples taken in the garage, the apartment, and stairwell leading to the apartment all matched Bridge's DNA.[81]

The blood sample from the portable heater found in the bedroom of the apartment had major and minor DNA components.  The major component matched that of the

---

[74] *Id.* at 103.

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.* at 103-04.

victim.  The minor component was inconclusive because there was not enough DNA to determine whose it was.[82]  Quinones, King, and Bland were excluded from all DNA tests; none of the items matched their DNA.[83]

At the close of the state's case, Bridges moved for a Crim. R. 29 acquittal.  The trial court granted his motion as to the kidnapping count, but denied it as to the remaining counts.[84]

The jury found Bridges not guilty of aggravated murder, but guilty of the lesser-included offense of murder,  murder, felonious assault, tampering with evidence, and abuse of a corpse.[85]

The trial court merged the murder and felonious assault counts.[86]  The state elected to proceed on the lesser-included offense of murder.[87]  The trial court sentenced Bridges to a total of eighteen years and six months to life in prison: fifteen years to life for murder; thirty months for tampering with evidence; and twelve months for abuse of a corpse.  These sentences were all to be served consecutive to one another.[88]

---

[82] *Id.* at 104.

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.*

[88] *Id.* at 104-05.

-14-

**B.    Delayed Direct Appeal**

*1.    Ohio Court of Appeals*

Bridges, through counsel, filed an untimely[89] notice of appeal[90] with the Ohio

Court of Appeals.  Bridges then filed a motion for leave to file a delayed appeal[91] which

the court granted.[92]  In his brief, Bridges filed three assignments of error:

1.    "The convictions of murder and felonious assault are against the weight of the evidence."

2.    "The evidence is insufficient to sustain a conviction of Tampering With Evidence in violation of R.C. § 2921.12(A)."

3.    "The evidence is insufficient to sustain a conviction of Offenses Against a Human Corps[e] in violation of R.C. § 2927.01(B)."[93]

The state filed a brief in response.[94] The Ohio appeals court overruled all three

assignments of error and affirmed the decision of the trial court.[95]

---

[89]   Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007) (unreported case).  Bridges's conviction and sentence were journalized on November 15, 2013 (ECF No. 25, Attachment 1 at 16), and the notice of appeal was filed on December 23, 2013. *Id.* at 18.

[90]   *Id.* at 16.

[91]   *Id.* at 27.

[92]   *Id.* at 34.

[93]   *Id.* at 40.

[94]   *Id.* at 70.

[95]   *Id.* at 86.

## 2.    *The Supreme Court of Ohio*

Bridges, *pro se*, thereupon filed a timely[96] notice of appeal with the Ohio Supreme Court.[97] In his brief in support of jurisdiction, he raised three propositions of law:

1.    The trial court erred by entering a judgment of conviction of murder and felonious assault are against the manifest weight and sufficiency of the evidence, in derogation of Defendant's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

2.    The appellant was deprived his right to a fair trial and due process under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution when he was convicted of Tampering with Evidence pursuant to O.R.C. §2921.12.

3.    The appellant was deprived of Due Process Clause of the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution when he was convicted of Offenses Against a Human Corps pursuant to O.R.C. §2927.01(B).[98]

The State filed a waiver of memorandum in response.[99]  On April 8, 2014, The Ohio Supreme Court declined to accept jurisdiction of the appeal under S.Ct.Prac.R.

---

[96]  *See* Ohio S. Ct. Prac. R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case).  The Court of Appeals decision was filed on October 16, 2014 and Bridges appeal to the Ohio Supreme Court was filed on December 1, 2014. *Id.* at 117.

[97] *Id.*

[98] *Id.* at 120.

[99] *Id.* at 168.

7.08(B)(4).[100] Bridges then filed a motion for reconsideration of the Ohio Supreme Court's ruling declining to accept jurisdiction[101] which the Court denied.[102] The record does not reflect that Bridges appealed to the United States Supreme Court.

**C.     Ohio App. R. 26 application to reopen appeal**

*1.     Ohio Court of Appeals*

On October 30, 2014, Bridges, *pro se*, filed an App. R. 26(B) application to reopen his appeal with the Ohio Court of Appeals.[103] In his brief, Bridges raised four assignments of error:

1.     "Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his appellate counsel omitted a dead bang winner, prejudicing appellant to receiving a full review by the court."[104]

2.     "The trial court committed reversible error when it allowed the media the right to publish information regarding the case. The trial court violated the appellant's right to due process and a fair trial under the Fifth and Fourteenth Amendments of the United States Constitution, Article One, Section Ten and Sixteen of the Ohio Constitution."[105]

---

[100] *Id.* at 169.

[101] *Id.* at 170

[102] *Id.* at 176.

[103] *Id.* at 177.

[104] *Id.* at 180.

[105] *Id.* at 181.

3.  "The appellant was deprived of his right to effective assistance of counsel as provided pursuant to the Fourteenth and Sixteenth Amendments to the United States Constitution."[106]

4.  "The trial court erred when it allowed highly prejudicial evidence to be amitted [sic] at trial without having an evidentiary hearing, violating appellate's [sic] due process rights guaranteed under the Fourteenth Amendment to the United States Constitution and Article One, Section 10 of the Ohio Constitution."[107]

The State filed a memorandum in opposition,[108] to which Bridges filed a reply.[109]

On April 14, 2015, the Ohio Court of Appeals denied Bridges App. R. 26(B) application.[110]

## 2.  *The Supreme Court of Ohio*

Bridges, *pro se*, filed a timely[111] notice of appeal[112] to the Supreme Court of Ohio.

In his memorandum in support, Bridges raised the following four propositions of law:

1.  "The appellant was deprived due process and the effective assistance of appellate counsel as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1 Section

---

[106] *Id.* at 182.

[107] *Id.* at 229.

[108] *Id.* at 328.

[109] *Id.* at 338.

[110] *Id.* at 359.

[111] The Ohio Court of Appeals denied Bridges's App.R.26(B) application on April 14, 2015.  Bridges filed his notice of appeal with the Ohio Supreme Court on May 15, 2015; thus, it is timely.

[112] *Id.* at 370.

10 and 16 of the Ohio Constitution for failing to raise a dead bang winner, prejudicing the appellant to receiving Full and Fair review on direct appeal."[113]

2.   "The appellant was deprived the effective assistance of counsel as guaranteed to the Sixth Amendment to the United States Constitution."[114]

3.   "Appellant argues that he was deprived of the right to an impartial jury because of the pretrial publicity in this case. A violation of his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, Section 16, of the Ohio Constitution."[115]

4.   "The appellant was deprived the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution when Appellant counsel failed to object to the admission of highly prejudicial evidence pursuant Evd.R.403."[116]

The State did not file a brief in opposition. The Supreme Court of Ohio declined to accept of the appeal under S. Ct. Prac. R. 7.08(B)(4).[117] The record does not indicate if Bridges appealed to the United States Supreme Court.

On July 28, 2015, Bridges filed a motion for immediate stay pending completion of his actual innocence claims on appeal with the Ohio Court of Appeals.[118] On July 29,

---

[113] ECF No. 25, Attachment 2 at 382.

[114] *Id.* at 385.

[115] *Id.* at 386.

[116] *Id.* at 388.

[117] *Id.* at 403.

[118] *Id.* at 404.

2015, Bridges also filed a motion for reconsideration with the Supreme Court of Ohio's decision dismissing his appeal.[119]  The Supreme Court of Ohio denied the motion for reconsideration and motion for immediate stay.[120]

## D.  Petition for post-conviction relief

On July 23, 2014, Bridges, *pro se*, filed a petition for post-conviction relief.[121]  In his petition, Bridges raises the following four claims for relief:

1.  "Petitioner was deprived of his right to substantive due process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 1, 9,10, and 16 if the Ohio Constitution, where his jury trial was devoid of any testimony from the witness identifying petitioner as the perpetrator."[122]

2.  "Petitioner was deprived of the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."[123]

3.  "Petitioner was deprived of his right to substantial due process and equal protection of law as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, when tainted evidence was placed before the jury in bad faith by the State, in order to obtain an illegal conviction against Petitioner, someone the State

---

[119] *Id.* at 431.

[120] *Id.* at 439.

[121] *Id.* at 440.

[122] *Id.* at 441.

[123] *Id.* at 442.

knew or should have known was actually innocent under the defense of **mere presence**."[124]

4.      "Petitioner was deprived of his right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 10 and 16 of the Ohio Constitution, due to prosecutorial misconduct."[125]

The trial court denied Bridges's petition for post-conviction relief.[126] Bridges, *pro se*, then filed a request for findings of fact and conclusions of law.[127] The trial court, in its findings of fact and conclusions of law, found that Bridges failed to establish substantive grounds for relief and denied the petition.[128]

## 1.      *Ohio Court of Appeals*

Bridges, *pro se*, filed a timely[129] notice of appeal[130] with the Ohio Court of Appeals. The Court, *sua sponte*, dismissed the appeal for failure to file the record.[131]

---

[124] *Id.* at 443-44 (emphasis in original).

[125] *Id.* at 444.

[126] *Id.* at 466.

[127] *Id.* at 467.

[128] *Id.* at 471.

[129] The trial court issued its findings of fact and conclusions of law on September 8, 2014 and Bridges filed his notice of appeal on September 16, 2014; thus, it is timely.

[130] *Id.* at 480.

[131] *Id.* at 510.

-21-

Bridges, *pro se*, filed a timely[132] second notice of appeal[133] with the Ohio Court of Appeals. The Court dismissed Bridges's appeal for failure to file the record.[134] The record does not indicate that Bridges filed an appeal with the Ohio Supreme Court.

**E.    Successive post-conviction petition, Crim. R. 33 motion for new trial, and consolidated appeal**

*1.    Successive post-conviction petition*

Bridges, *pro se*, filed a second petition to vacate or set aside judgment of conviction or sentence.[135] In his petition, Bridges raised the following four claims for relief:

1.    "The petitioner was denied the effective assistance counsel [sic] guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution."[136]

2.    "The petitioner's [sic] was deprived of his Fourteenth Amendment right to due process under the United States Constitution and Article 1, Section 16 of the Ohio Constitution when the trial court lack [sic] subject matter jurisdiction of his case. (See exhibits F, J, L, M, N)."[137]

---

[132] The trial court issued its findings of fact and conclusions of law on September 8, 2014, and Bridges filed his second notice of appeal on September 17, 2014.

[133] ECF No. 25, Attachment 2 at 512.

[134] *Id.* at 551.

[135] *Id.* at 552.

[136] ECF No. 25, Attachment 3 at 555.

[137] *Id.* at 573.

3.  "The petitioner asserts that he was denied a speedy trial pursuant to R.C. 2945.71 in violation of of [sic] the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution."[138]

4.  "Petitioner was denied a fair trial, due to both witness misconduct and prosecution misconduct during closing arguments in violation of his Sixth and Fourteenth Amendment under the United States Constitution (right to a fair trial and due process) and Article 1, Section 16 of the Ohio Constitution."[139]

The trial court denied Bridges's petition on March 24, 2015.[140]

## 2.  *Findings of fact and conclusions of law*

Bridges filed a request for findings of fact and conclusions of law[141] which the trial court denied.[142]  Bridges then filed a motion for leave to appeal[143] in the Ohio Court of Appeals which the trial court also denied.[144]

---

[138] *Id.* at 581.

[139] *Id.* at 584.

[140] *Id.* at 789.

[141] *Id.* at 790.

[142] *Id.* at 793.

[143] *Id.* at 794.

[144] *Id.* at 796.

a.   *Ohio Court of Appeals*

Bridges, *pro se*, filed a timely[145] notice of appeal[146] to the Ohio Court of Appeals.

In his brief, Bridges raised the following four assignments of error:

1.   "The Appellant was denied effective assistance counsel [sic] guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

2.   "The Appellant was deprived his Fourteenth Amendment right to due process under the United States Constitution and Article I, Section 16 of the Ohio Constitution when the trial court lack [sic] subject matter jurisdiction of his case."

3.   "The Appellant asserts that he was denied a speedy trial pursuant to R.C. 2945.71 in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

4.   "The Appellant was denied a fair trial, due to both witness misconduct and prosecution misconduct during closing arguments in violation of his Sixth and Fourteenth Amendment under the United States Constitution (right to a fair trial and due process) and article I, Section 16 of the Ohio Constitution."[147]

---

[145] The trial court denied Bridge's successive post-conviction petition on March 24, 2015.  Bridges filed his Notice of Appeal on April 22, 2015.

[146] *Id.* at 797.

[147] *Id.* at 809.

The State filed a brief in response,[148] to which Bridges filed a reply.[149]  Bridges then filed a motion to consolidate the appeal of his post-conviction petition with another appeal he had pending relating to the denied motion for a new trial.[150] The court granted the motion and consolidated the appeals.[151]

### 3.    *Crim. R. 33 motion for a new trial*

Bridges, *pro se*, filed an untimely motion for a new trial.[152]  On May 18, 2015, the trial court denied the motion.[153]

### a.    *Ohio Court of Appeals*

Bridges, *pro se*, filed a timely[154] notice of appeal to the Ohio Court of Appeals.[155] In his brief, Bridges raised the following assignments of error:

1.    "The trial court abused its discretion when it denied the motion for a new trial based on newly discovered evidence."[156]

---

[148] *Id.* at 851.

[149] *Id.* at 865.

[150] ECF No. 25, Attachment 4 at 922.

[151] *Id.* at 929.

[152] *Id.* at 930.

[153] *Id.* at 959.

[154] The trial court denied Bridge's motion for a new trial on May 18, 2015.  Bridges filed his notice of appeal on June 2, 2015; thus, it is timely.

[155] *Id.* at 960.

[156] *Id.* at 978.

2.   "Whether the trial court abused its discretion when it denied the
     appellant when admitting highly inflammatory and gruesome photo.
     And whether The [sic] probative value of the photo was far
     outweighed by the danger of unfair prejudice, Evid.R. 403(a), and
     this denied appellant a fair trial as guaranteed by the Fifth, Sixth, and
     Fourteenth Amendments to the United States Constitution and
     Sections 10 and 16, Article 1 of the Ohio Constitution."[157]

3.   "Whether the Trial Court abused its discretion when it denied the
     motion for a new trial.  Where the new trial was based on a violation
     to the appellant Eighth amendment [sic]."[158]

This appeal was consolidated with Bridges's appeal related to his post-conviction

petition.[159]

### 4.   *Consolidated appeal*

*a.    Ohio Court of Appeals*

After the consolidation of his actions, Bridges filed a motion for leave to amend

his brief.[160]  The court denied the motion[161] and the State filed its brief.[162]  Bridges then

filed a motion to dismiss his merit brief.[163] The appellate court denied the motion and

informed Bridges that the case would go to the merit panel unless he dismissed the entire

---

[157] *Id.* at 993.

[158] *Id.* at 996.

[159] *Id.* at 929.

[160] *Id.* at 1005.

[161] *Id.* at 1007.

[162] *Id.* at 1008.

[163] *Id.* at 1022.

appeal.[164] Bridges then filed a motion for immediate stay for appeal[165] which the court denied.[166] The Ohio appeals court overruled Bridges's assignments of error and affirmed the decision of the trial court.[167]

b.    *The Supreme Court of Ohio*

Bridges, *pro se*, filed a timely[168] notice of appeal[169] to the Supreme Court of Ohio. In his memorandum in support, Bridges asserts the following propositions of law:

1.    "The Appellant was denied the effective assistance counsel [sic] guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

2.    "The Appellant was deprived of his Fourteenth Amendment right to due process under the United States Constitution and Article I, Section 16 of the Ohio Constitution when the trial court lack [sic] subject matter jurisdiction of his case."

3.    "The Appellant argues that he was denied a speedy trial pursuant to R.C. 2945.71 in violation of the Sixth and Fourteenth Amendment under the United States Constitution. And Article, Section 10 of the Ohio Constitution."

---

[164] *Id.* at 1034.

[165] *Id.* at 1035.

[166] *Id.* at 1109.

[167] *Id.* at 1110.

[168]    *See* Ohio S. Ct. Prac. R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case).

[169] *Id.* at 1124.

4. "The Appellant was denied a fair trial, due to both witness misconduct and prosecution misconduct during closing arguments in violation of his Sixth and Fourteenth Amendment under the United States Constitution (right to a fair trial and due process) and Article I, Section 16 of the Ohio Constitution."

5. "THE 8th DISTRICT Court abused its discretion when it denied the Appeal for the new trial based on newly discovered evidence. (VIA) Fundamental miscarriage of Justice (VIA) Ineffective Assistance of counsel."

6. "THE 8th DISTRICT Court violated Appellants substantial Constitutional right in it's [sic] ruling when palpable defects drowns it's judgements [sic] of Res-Judicata the reasons Why Appellants Appeal And issues was denied [sic]."

7. "THE 8th DISTRICT Court ruled unfairly when it denied the appellant when admitted a highly inflammatory and gruesome photo. Fundamentally, The probative value of the photo was far outweighed by the danger of unfair prejudice, Evid. R. 403(a), and this denied appellant a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article 1, of the Ohio Constitution."

8. "THE 8th DISTRICT Court Ruled unfairly when it denied the Appeal for a new trial. Where the new trial was based on a violation to the appellant Eighth amendment. [sic]"[170]

The Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).[171] Bridges then filed a motion for reconsideration[172] which

---

[170] *Id.* at 1129.

[171] *Id.* at 1158.

[172] *Id.* at 1159.

the court denied.[173] The record does not reflect that Bridges appealed to the Unites States Supreme Court.

## F.   Delayed motion for a new trial

Bridges, *pro se*, filed a motion in the trial court for leave to file a delayed motion for a new trial.[174] He then filed a delayed motion for new trial instanter with memorandum in support.[175] In his memorandum in support, Bridges raised the following claims:

1.   "The defendant right to have effective assistance of counsel via U.S. v. Cronic At (675 F.2d 1126) during trial was violated, causing a violation to the Defendant 6 Amendment and 14 amendment to the Ohio Constitution and al his U.S. Constitutional rights. [sic]"[176]

2.   "Defendant was prejudiced when the defendant Actual/Factual innocence was on the face of the record. (Pursuant to but not limited to) *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed. 2D 560 (1997); and (Quoting) *State v. Byrd*, 145 Ohio App.3d 318, 330-331, 762 N.E.2d 1043 (1st Dist 2001); VIA a manifestation of a substantive violation to all the defendants constitutional rights, VIA Case Law of *Strickland v. Washington* (1984), 466 U.S. 668, 205 S. Ct. 2025, 80 L.Ed 2d 674. And Case Law *State v. Ayala* (1996), 111 Ohio App.3d 627, 631, 676 N.E.2d 1201. [sic]"[177]

3.   "The trial court erred when it denied the defendant's Motion for Appointment of Private Investigator, thus depriving him of his right to a fair trial and due process guaranteed under the Sixth and

---

[173] *Id.* at 1164.

[174] *Id.* at 1165.

[175] ECF No. 25, Attachment 5 at 1172.

[176] *Id.* at 1361.

[177] *Id.* at 1365.

-29-

Fourteenth Amendment to the United States Constitution, Article I, Section 10 and 16 of the Ohio Constitution."[178]

The State filed a brief in opposition.[179] Bridges filed for leave to supplement his motion.[180] The trial court denied Bridges motion for leave to file delayed motion for a new trial.[181] Bridges then filed an emergency reply to the State's brief in opposition to the defendant's motion for leave to file motion for new trial.[182] Bridges also filed a motion for reconsideration.[183] The trial court denied Bridges's motion for reconsideration.[184]

## G.    Motion to vacate judgment

On October 13, 2015, Bridges filed a motion to vacate void judgment for lack of jurisdiction[185] which the trial court denied.[186]

---

[178] *Id.* at 1385.

[179] *Id.* at 1427.

[180] *Id.* at 1437.

[181] *Id.* at 1443.

[182] ECF No. 25, Attachment 6 at 1444.

[183] *Id.* at 1453.

[184] *Id.* at 1467.

[185] *Id.* at 1468.

[186] *Id.* at 1472.

*1.*    ***Ohio Court of Appeals***

On October 15, 2015, Bridges, *pro se*, filed a timely[187] notice of appeal[188] to the

Ohio Court of Appeals. In his brief, Bridges asserts the following assignments of error:

1.      "Appellant right to have effective assistance of counsel via U.S. v.
        Cronic At (675 F.2d 1126) during trial was violated, causing a
        violation to the Defendant 6 Amendment and 14 Amendment to the
        Ohio Constitution and all his U.S. Constitutional rights.
        (Irregularities in proceedings) - (Crim.R. 33(A)(1) [sic]"[189]

2.      "Appellant was prejudiced when the Appellant Actual/Factual
        innocence was no the face of the record. (Pursuant to but not limited
        to) *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
        L.Ed.2d 560 (1997); and (Quoting) *State v. Byrd*, 145 Ohio App.3d
        318, 330-331, 762 N.E.2d 1043 (1st Dist.2001); VIA a manifestation
        of a substantive violation to all Appellants constitutional rights, VIA
        Case Law of *Strickland v. Washington* (1984), 466 U.S. 668, 104
        S.Ct. 2025, 80 L.Ed.2d 674. And Case Law *State v. Ayala* (1996),
        111 Ohio App.3d 627, 631, 676 N.E.2d 1201. CRIM R.33(A)(5)
        ERROR. [sic]"[190]

3.      "Court erred when it denied the defendant's Motion for Appointment
        of Private Investigator, thus depriving him of his right to a fair trial
        and due process guaranteed under the Sixth and Fourteenth
        Amendment to the United States Constitution, Article I, Section 10
        and 16 of the Ohio Constitution. Violating CriM. R. (A)(5), abuse of
        discretion, and ineffective assistance [sic]"[191]

---

[187] The trial court denied Bridges's motion to vacate judgment on October 13, 2015,
and Bridges filed his notice of appeal on October 15, 2015; thus, it is timely.

[188] *Id.* at 1473.

[189] *Id.* at 1481.

[190] *Id.* at 1485.

[191] *Id.* at 1505.

4.    "The trial court abused it's discretion when it denied the appellant his right to a New Trial; Where His filing was supported with documentations and supliments. [sic]"[192]

The State filed a motion to dismiss.[193]  The appellate court referred the State's Motion to Dismiss to the panel hearing the merits on Bridges's appeal.[194]  Bridges filed an opposition to the State's motion to dismiss.[195] The State then filed a brief[196] to which Bridges filed a reply.[197]  Bridges then filed a motion to consolidate this action with CA-16-104506.[198]  On October 13, 2016, the Ohio Court of Appeals affirmed the trial court's decision on Bridge's motion to correct error and the Ohio Crim. R. 33 motion for a new trial (CA-16-103634).[199]

---

[192] *Id.* at 1507.

[193] *Id.* at 1511.

[194] *Id.* at 1520.

[195] *Id.* at 1521.

[196] *Id.* at 1535.

[197] *Id.* at 1551.

[198] *Id.* at 1561.

[199] ECF No. 38, Attachment 2 at 20.

## 2.     *The Supreme Court of Ohio*

On November 3, 2016, Bridges, *pro se*,  timely[200] filed a notice of appeal with the Supreme Court of Ohio.[201]  According to the docket sheet, this matter remains pending.[202]

## H.     **Motion for leave with memorandum in support to "correct err 2903.02(A) conviction"**

Bridges, *pro se*, filed another post-conviction petition, a "motion to leave with memorandum in support to correct err 2903.02(A) . . . ."[203]  The trial court denied the motion.[204]

## 1.     *Ohio Court of Appeals*

On May 20, 2016, Bridges, *pro se*, filed a timely[205] notice of appeal.[206] The record does not reflect anything further in regard to this appeal.

---

[200] *Id.*, Attachment 3 at 1.

[201] *Id.*

[202] *Id.*

[203] ECF No. 25, Attachment 6  at 1567.

[204] *Id.* at 1583.

[205] *Id.* at 1584.

[206] *Id.*

-33-

## I. Petition for writ of habeas corpus

On December 10, 2015, Bridges, *pro se*, timely filed[207] a federal petition for habeas relief.[208] In it, he raises the following grounds for relief:

| | |
|---|---|
| **GROUND ONE:** | "Petitioner's convictions for murder and felonious assault are based on insufficient evidence, and there is no evidence in the state trial court record of guilt beyond a reasonable doubt his imprisonment by Ohio violates <u>Jackson v. Virginia</u>, 443 U.S. 307; and <u>Tibbs v. Florida</u>, 457 U.S. 31 [sic]"[209] |
| **GROUND TWO:** | "The evidence is insufficient to sustain a conviction of tampering with evidence making Petitioner confinement in violation of the 5th, 6th, 14th Amendments. [sic]"[210] |
| **GROUND THREE:** | "The evidence is insufficient to support a finding of guilty beyond a reasonable doubt of offense against a human corps <u>in re Winship</u>, 397 U.S. 358 violated. [sic]"[211] |
| **GROUND FOUR:** | "Ineffective Assistance of Appellate Counsel on Appeal in violation of |

---

[207] The present petition for federal habeas relief was filed on December 10, 2015. ECF No. 1. As such, it was filed within one year of the conclusion of Bridges's direct appeal in the Ohio courts (April 8, 2014) and so is timely under 28 U.S.C. § 2254(d)(1).

[208] ECF No. 1.

[209] *Id.* at 15.

[210] *Id.* at 16.

[211] *Id.*

Petitioner's Sixth Amendment Right to counsel."[212]

**GROUND FIVE:**          "The Appellant was denied the effective assistance of trial counsel guaranteed by the Sixth Amendment to the United States Constitution."[213]

**GROUND SIX:**           "Petitioner was denied his right to a speedy trial in violation of O.R.C. §2945.71-73, and the United States Constitution 6th, 14th Amendments."[214]

**GROUND SEVEN:**         "The Petitioner was denied the right to a fair trial, due to both witness and prosecutor misconduct during arguments in violation of his Sixth and Fourteenth Amendments to the United States Constitution."[215]

**GROUND EIGHT:**         "The State of Ohio denied this Petitioner right to new trial [sic] without due process or equal protection under the 5th, 6th, 14th Amendment to the United States Constitution."[216]

**GROUND NINE:**          "The trial court denied the Petitioner due process of law when it admitted highly inflammatory and gruesome photo, where the proative value outweigh the prejudice to his right to a fair trial, and it

---

[212] *Id.*

[213] *Id.* at 19.

[214] *Id.*

[215] *Id.* at 20.

[216] *Id.*

denied Mr. Bridges his day in court [sic]."[217]

**GROUND TEN:** "The trial court denied the Petitioner's Eighth Amendment right to bail."[218]

**GROUND ELEVEN:** "The 8th District Court of Appeals denied the Petitioner's fundamental right to Petition the government courts for redress, which deny his Federal Constitutional right to be heard guaranteed by the First, Fifth, Sixth, Fourteenth Amendments of United States Constitution redress requested [sic]."[219]

**GROUND TWELVE:** "The Petitioner was denied his fundamental rights to redress in the courts of law was violated where the trial court denied the Petitioner's motion for a new trial. [sic]"[220]

**GROUND THIRTEEN:** "The Petitioner's imprisonment is in violation of the United States Constitution where the pre-trial and trial transcripts contained evidence of actual innocence further due to this actual (factual) innocence evidence any procedural defaults should be excused via the 5th, 6th, 14th Amendments U.S. Constitution.[sic]"[221]

---

[217] *Id.* at 21.

[218] *Id.*

[219] *Id.*

[220] *Id.* at 22.

[221] *Id.* at 23.

## Analysis

### A.    Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Bridges is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[222]

2.    There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[223]

3.    In addition, Bridges states,[224] and my own review of the docket confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[225]

4.    Moreover, subject to the procedural default arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[226]

---

[222] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[223] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[224] *See* ECF No.1 at 9.

[225] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[226] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

5.      Finally, Bridges requested the appointment of counsel,[227] and counsel was appointed.[228] Appointed counsel filed a motion to withdraw[229] and Bridges filed a motion to remove counsel.[230] The Court granted the request and removed appointed counsel.[231] Bridges requested an evidentiary hearing to develop the factual bases of his claims[232] which the Court denied.[233] Bridges again requested an evidentiary hearing in his traverse along with an appendix of motions.[234]

## B.      Applicable law

## 1.      *AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[235]

codified at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ

---

[227] ECF No. 7; 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[228] ECF No. 9.

[229] ECF No. 18.

[230] ECF No. 19.

[231] ECF No. 20.

[232] *See* ECF No. 7; 28 U.S.C. § 2254(e)(2).

[233] ECF No. 11.

[234] ECF No. 33. The evidentiary hearing was requested in his traverse and not in his original petition. New issues may not be raised in the traverse. "[A] court cannot consider new issues raised in a traverse or reply to the State's answer." *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). Thus, this Court need not address this request. Moreover, by attaching to his traverse various items that purport to be motions, Bridges has not submitted these alleged filings to the Court for docketing according to Federal Rules of Civil Procedure or Rule 7.1 of the Local Civil Rules. These rules contemplate an ability of the opposing party to respond to properly filed motions, while no response to a traverse is similarly contemplated. As such, and because as noted above, no new matters may be raised in the traverse, the Court has not here considered these items.

[235] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

of habeas corpus.[236]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.[237]

The Supreme Court teaches that this standard for review is indeed both "highly deferential" to state court determinations[238] and  "difficult to meet,"[239] thus preventing petitioner and federal court alike "from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."[240]

a.    *"Contrary to" or "unreasonable application of" clearly established federal law*

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[241]  In this context, there are two ways that a

---

[236] *See* 28 U.S.C. § 2254 (2012).

[237] 28 U.S.C. § 2254(d) (2012).

[238] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[239] *Id.* (citation omitted).

[240] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

[241] *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

state court decision can be "contrary to" clearly established federal law:[242] (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case[243] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[244] A state court's decision does not rise to the level of being "contrary to" clearly established federal law simply because that court did not cite the Supreme Court.[245] The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[246] Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[247] When no such Supreme Court holding exists, the federal habeas court must deny the petition.

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule but applies it

---

[242] *Brumfield v. Cain*, 135 S. Ct. 2269, 2293 (2015).

[243] *Id.*

[244] *Id.*

[245] *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[246] *Id.*

[247] *See id.*

unreasonably to the facts of the petitioner's case.[248]  Whether the state court unreasonably

applied the governing legal principle from a Supreme Court decision turns on whether the

state court's application was objectively unreasonable.[249]  A state court's application that

is "merely wrong," even in the case of clear error, is insufficient.[250]  To show that a state

court decision is an unreasonable application, a petitioner must show that the state court

ruling on the claim being presented to the federal court "was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement."[251]  Under the "unreasonable application" clause,

the federal habeas court must grant the writ if the State court adopted the correct

governing legal principle from a Supreme Court decision, but unreasonably applied that

principle to the facts of the petitioner's case.

b.      *"Unreasonable determination" of the facts*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal

habeas court accord the state trial courts substantial deference:[252]  Under § 2254(e)(1), "a

determination of a factual issue made by a [s]tate court shall be presumed to be

---

[248] *White v. Woodall*, 134 S. Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

[249] *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003)).

[250] *Id.*

[251] *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

[252] *Brumfield*, 135 S. Ct. at 2277.

correct."[253]  A federal court may not characterize a state court factual determination as

unreasonable "merely because [it] would have reached a different conclusion in the first

instance."[254]  While such deference to state court determinations does not amount to an

"abandonment or abdication of judicial review"or "by definition preclude relief,"[255] it is

indeed a difficult standard to meet.  "The role of a federal habeas court is to guard against

extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of

factual findings and to substitute its own opinions for the determination made on the

scene by the trial judges."[256]

## 2.  *Procedural default*

A claim not adjudicated on the merits by a state court is not subject to AEDPA

review.[257]  Such a claim is subject to procedural default if a petitioner failed to raise it

when state court remedies were still available or the petitioner violated a state procedural

rule.[258]  The petitioner must afford the state courts "opportunity to pass upon and correct

---

[253] 28 U.S.C. § 2254(e)(1) (2012).

[254] *Brumfield*, 135 S. Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

[255] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

[256] *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (citation omitted).

[257] *See Harrington v. Richter*, 562 U.S. 86, 104 (2011).

[258] *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

alleged violations of its prisoners' federal rights."[259] This requires a petitioner to go through "one complete round" of the state's appellate review process,[260] presenting his or her claim to "*each* appropriate state court."[261]  A petitioner may not seek habeas relief, then, if he or she does not first "fairly present[] the substance of his [or her] federal habeas corpus claim to the state courts."[262]

When a state asserts that a violation of a state procedural rule is the basis for default in a federal habeas proceeding, the Sixth Circuit has long employed a four-part to test determine whether the claim is procedurally defaulted.[263]  A petitioner's violation of a state procedural rule will bar federal review if the state procedural rule satisfies the standards set out in the test:[264]

(1) "[T]here must be a state procedure in place that the petitioner failed to follow."[265]

---

[259] *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citation omitted).

[260] *Boerckel*, 526 U.S. at 845.

[261] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).

[262] *West*, 790 F.3d at 697 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971) (internal quotation marks omitted)).

[263] *See Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986) (outlining four-part test); *Landrum v. Mitchell*, 625 F.3d 905, 916-17 (6th Cir. 2010) (applying test post-AEDPA).

[264] *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008).

[265] *Id.* (citing *Maupin*, 785 F.2d at 138).

-43-

(2) "[T]he state court must have denied consideration of the petitioner's claim on the ground of the state procedural default."[266]

(3) "[T]he state procedural rule must be an 'adequate and independent state ground,'[267] that is both 'firmly established and regularly followed.'"[268]

(4) The petitioner cannot demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice."[269]

In order to show "cause" for the default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[270] In order to show "prejudice" for the default, the petitioner must show that the errors at trial "worked to [his or her] *actual* and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."[271]

---

[266] *Id.*

[267] *Id.* (quoting *Maupin*, 785 F.2d at 138) ("A state procedural rule is an independent ground when it does not rely on federal law.") (citing *Coleman v. Thompson*, 501 U.S. 722, 732)).

[268] *Id.* (citation omitted).

[269] *Id.* (quoting *Coleman*, 501 U.S. at 750).

[270] *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[271] *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Additionally, "a credible showing of actual innocense" may also excuse an otherwise defaulted claim, and effectively allow a petitioner to seek review.[272]

Notwithstanding these elements, the Supreme Court has held that a federal habeas court need not consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[273]

### 3. *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law.[274] Accordingly, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[275] In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[276]

---

[272] *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013); *see Schulp v. Delo*, 513 U.S. 298, 324 (1995) (explaining that a "credible" claim requires "new reliable evidence" and factual innocence beyond legal insufficiency).

[273] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) ("[O]n occasion [the Sixth Circuit] has reached beyond the procedural-default analysis to address the underlying claim on the merits when it presents a more straightforward ground for decision.") (citation omitted).

[274] 28 U.S.C. § 2254(a).

[275] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[276] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial.[277] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness" of a trial.[278] Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[279]

The petitioner bears the burden of showing a violation of a principle of fundamental fairness.[280] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[281] and may not second-guess a state court's interpretation of its own procedural rules.[282] Further, while in general distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[283] the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount

---

[277] *Estelle*, 502 U.S. at 67-68.

[278] *Bey*, 500 F.3d at 522 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[279] *Id.* at 521(quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

[280] *Id.*

[281] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[282] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[283] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[284]

### 4. *Ineffective assistance of appellate counsel*

Under *Strickland v. Washington*,[285] a petitioner establishes ineffective assistance of counsel by showing first that counsel's performance was deficient, and then that this deficient performance prejudiced the petitioner by rendering the proceeding unfair and the result unreliable.[286] Although *Strickland* involved the ineffective assistance of trial counsel, a comparable test applies to claims of ineffective assistance of appellate counsel.[287] In either instance, both prongs of the *Strickland* test must be met in order for the writ to be granted; thus, courts need not address the issue of competence if the claim can be disposed of for failure to show prejudice.[288]

In reviewing counsel's performance, the court recognizes that counsel is presumed to have rendered adequate assistance.[289] The reviewing court must not engage in

---

[284] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) (quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983)).

[285] *Strickland v. Washington*, 466 U.S. 668 (1984).

[286] *Id.* at 687.

[287] *Bowen v. Foltz*, 763 F.2d 191, 194 (6th Cir. 1985).

[288] *Strickland*, 466 U.S. at 697.

[289] *Id.* at 690.

-47-

hindsight but should evaluate counsel's performance within the context of the circumstances existing at the time of the alleged errors.[290]

The key is not whether counsel's choices were strategic but whether they were reasonable.[291]  To that end, counsel has a duty to make reasonable investigation into possible alternatives but, having done so, will be presumed to have made a reasonable decision in choosing.[292]

In the context of appeal, an appellate attorney need not raise every possible issue on appeal to be effective.[293]  Effective appellate advocacy often requires that the attorney select only the most promising issues for review.[294]  In addition, there can be no ineffectiveness in failing to argue a non-meritorious issue.[295]

With respect to the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding

---

[290] *Id.*

[291] *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

[292] *Strickland*, 466 U.S. at 691.

[293] *Jones v. Barnes*, 463 U.S. 745, 752 (1983).

[294] *Id.*

[295] *Strickland*, 466 U.S. at 698.

would have been different.[296]  A reasonable probability is a probability sufficient to undermine confidence in the outcome.[297]

## C.    Recommendation on grounds asserted

As the State observes, Bridges's petition is "unfocused," with 13 stated grounds for relief that, in turn, raise numerous sub-claims and interrelated arguments.[298]  In that regard, the State has grouped the claims and sub-claims into three categories: (1) procedurally defaulted claims; (2) non-cognizable claims of state law; and (3) claims that are without merit, as determined by AEDPA analysis.[299]

Bridges himself, as was noted in my order denying his motion to file objections to a prior order,[300] has conceded that the State's arrangement of his claims is well-organized and comprehensive.[301] This Report and Recommendation, therefore, organizes the analysis of the petition along the lines outlined by the State.

---

[296] *Id*. at 694.

[297] *Id.*

[298] ECF No. 25 at 28-29.

[299] *Id*. at 29.

[300] ECF No. 45.

[301] *Id.* at 2-3 (citing record).

## 1.    *Procedural default*

The State maintains that Grounds One, Four (subparts b, d, e, and f), Five, Seven, Nine, and Eleven are procedurally defaulted because Bridges failed to fairly present these claims to the Ohio courts and cannot now do so.[302]

### a.    *Ground One*

In Ground One, Bridges raises an argument that his conviction for murder and felonious assault are not supported by sufficient evidence. The State argues that Bridges raised only a manifest weight of the evidence claim to the Ohio courts, and that Bridges's argument there may be distinguished from the Sixth Circuit's decision in *Nash v. Eberlin*,[303] which teaches that in Ohio a manifest weight of the evidence argument presupposes a sufficiency of the evidence claim.  In that regard, the State argues, Bridges explicitly limited his appellate argument solely to a manifest weight of the evidence claim when he argued that "the evidence against [me] would have not have been sufficient, if not for the testimony of Jason Quinones."[304]  The brief goes on to argue that the testimony of Quinones was "not sufficiently credible to have been believed by the jury" and that a court reviewing for manifest weight of the evidence must reverse a conviction if the evidence supporting it is "so incredulous or incongruous that no reasonable jury" could

---

[302] ECF No. 25 at 29.

[303] *Nash v. Eberlin*, 258 Fed. Appx. 761, 765 (6th Cir. 2007).

[304] ECF No. 25 at 33 (citing record).

base a conviction on such evidence.[305] The State emphasizes that by framing the claim as he did, "[n]ot only did Bridges fail to raise a sufficiency argument, he plainly explained that he was raising a claim distinct from sufficiency," in that it asked the reviewing court to re-weigh the evidence without considering the testimony of a particular witness.[306]

To that point, Bridges's brief on appeal explicitly made separate claims for manifest weight of the evidence and sufficiency of the evidence as to different convictions.[307] In presenting the argument for the manifest weight claim, Bridges specifically stated in the appellate brief that the reasoning employed in making a manifest weight of the evidence argument is different from the reasoning used to argue an insufficiency of the evidence claim in that a manifest weight claim "has no basis in the Federal Constitution."[308]

Taken together, Bridges's formulation of the manifest weight claim on direct appeal clearly distinguishes itself from his sufficiency of the evidence claim. The State is, therefore, correct that this case is not identical to that of a *pro se* litigant who is imprecise in his understanding of the different nature of the two arguments.

---

[305] ECF No. 25, Attachment 1 at 51.

[306] ECF No. 25 at 33.

[307] *Id.* at 40.

[308] *Id.* at 51.

-51-

But, the decision of the Ohio appeals court here shows, as *Nash* found, that any finding that a conviction is supported by the manifest weight of the evidence necessarily implies that there was also sufficient evidence for that conviction.

In particular, the Ohio court found:

> {¶ 71} We agree that the evidence against Bridges was mostly circumstantial. The circumstantial evidence against Bridges, however, was overwhelming. The following evidence was presented at trial. On the morning of January 5, 2013, Bridges and Acoff spoke on their cell phones nine times between 7:10 a.m. and 9:15 a.m. Bridges called Acoff six times; Acoff called Bridges three times.

> {¶ 72} That same morning, Ace Taxi Service received a call for service from Bridges's cell phone number. When hearing a recorded voice requesting the taxi service, Bridges admitted to police, "that's my voice." The evidence established that Bridges called Ace Taxi Service three times on the morning of January 5, 2013—at 7:31 a.m., 8:06 a.m., and at 9:23 a.m.

> {¶ 73} In the first call, Bridges requested a taxi to pick up a female named "Shea" at 911 Rondel Avenue in Cleveland and take her to 7168 McKenzie Road in Olmsted Township. Acoff lived at 911 Rondel Avenue. In the first call, Bridges also asked what the fare would be. Bridges called back at 8:06 a.m., wondering what was taking so long. The cab arrived at 7168 McKenzie Road at 9:20 a.m. Bridges called back at 9:23 a.m., asking the operator again what the fare was. The taxi driver testified that Bridges argued with him about the fare when he arrived at the McKenzie Road address.

> {¶ 74} The taxi driver identified Acoff in a photo array, dressed as a woman, as the person he picked up at 911 Rondel Avenue. The taxi driver also identified Bridges in a photo array as the person who paid for the taxi when it arrived at 7168 McKenzie Road.

{¶ 75} The evidence also established that the taxi driver drove Acoff and Bridges to a convenience store so that Bridges could get change to pay the taxi driver. The taxi driver drove them back to the 7168 McKenzie Road address at around 9:33 a.m. The taxi driver left at that point. He saw Acoff and Bridges walking toward the house as he drove away.

{¶ 76} Police learned that Acoff began dressing as a woman in 2010. Police further learned that Acoff began prostituting himself on several websites. Nicole Cantie, Acoff's cousin, testified that the last known conversation that anyone in the family had with Acoff was on January 3, 2013, when her daughter was instant messaging him on Facebook.

{¶ 77} Quinones testified that he recalled the weekend of January 5, 2013, because it was his sister's birthday. He remembered that he could not go to his sister's birthday party because he had visitation with his daughter that weekend. Quinones's girlfriend, Irene, Bill King, and Irene's son's ex-girlfriend all corroborated Quinones's testimony. All four testified as to what they did on the night of January 4, 2013, and the morning of January 5, 2013.

{¶ 78} Quinones and King went to Quinones's apartment on January 5, 2013, to get money from Bridges that he owed Quinones for the utility bills at the apartment. When they arrived, sometime in the late morning or early afternoon, Bridges was standing outside of the apartment in a T-shirt and jeans, burning items in a fire pit. Quinones remembered wondering what Bridges was doing outside in the "freezing cold with a T-shirt and fire going." King also recalled it being very cold that day.

{¶ 79} Quinones and King stated that Bridges's hand was bleeding; Quinones said that it was "gushing blood everywhere." When Quinones tried to go inside of his apartment, Bridges did not want him to. Quinones did anyway. Quinones said that there was blood "all the way up the steps" to the apartment. The house was in disarray. There was blood all over the kitchen counter and floor. It also appeared that someone had tried to clean up the blood because it was smeared.

Quinones said that he was so mad at Bridges, he told Bridges to clean everything up and leave the apartment.

{¶ 80} King said that he took a photo of Bridges standing at the fire pit in his T-shirt after Quinones came back down from the apartment because of what Quinones had told him when he got back in the truck. The photo, which was entered into evidence, was dated January 5, 2013, and depicted Bridges standing outside by a fire pit, with snow all over the ground, in a T-shirt and jeans, burning what appears to be a lot of items. An expert opined that King had not altered his cell phone in any way.

{¶ 81} Quinones said that Bridges gave him different versions of what happened. A couple of days later, Bridges told Quinones another version of what happened, that two guys "jumped him" and he fought them off. Quinones did not call police because he said that he believed Bridges; Bridges even told him that the men were pressing charges against him for felonious assault. King said that although he suspected foul play, he did not call police because Quinones believed what Bridges told him.

{¶ 82} Finally, most of the blood samples collected by police matched Bridges's DNA, but one sample collected matched that of Acoff's DNA. And none of the blood samples collected by police, throughout the apartment, garage, and stairwell leading to the apartment, matched Quinones's, King's, or Bland's DNA (although one "touch DNA" sample matched Bland's, but he lived in the apartment after Bridges). Indeed, Bridges's blood was found all through the apartment, in the stairwell, and in the garage, near rope that was found that matched the rope that was tied around Acoff's body. Moreover, only Bridges's cell phone was in the same five-mile cell tower vicinity, near the 7168 McKenzie Road address, as Acoff's cell phone around the last time Acoff's cell phone was used.

{¶ 83} After reviewing the entire record, weighing all of the evidence and all reasonable inferences, considering the credibility of witnesses and determining whether in resolving any conflicts in the evidence, we conclude that this is not the "exceptional case" where the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541.[309]

Therefore, based on this extensive analysis of the evidence by the Ohio court, and mindful of the teaching of *Nash,* Ground One is not procedurally defaulted for the reasons set forth above. But, Ground One should be denied on the merits because the decision of the Ohio court in this regard is not contrary to the clearly established federal law of *Jackson v. Virginia.*[310]

b.    *Ground Four*

In Ground Four, Bridges argues that his appellate counsel was ineffective for failing to raise multiple grounds on appeal. The State asserts that some of these grounds were properly raised in Bridges's Rule 26(B) application to re-open his appeal and may now be addressed on the merits, while other grounds raised here were never presented to an Ohio court and are thus procedurally defaulted.[311]

For purposes of aligning the grounds asserted here in Ground Four and the grounds properly presented to an Ohio court in the Rule 26(B) application, the State compiled a table, reproduced below:[312]

---

[309] *Id.* at 110.

[310] *Jackson v. Virginia,* 443 U.S. 307 (1979).

[311] ECF No. 25 at 34.

[312] *Id.* at 36-37.

-55-

| Claim in Bridges's instant habeas petition | Was the claim raised in Bridges's 26(B) application? |
|---|---|
| Ground 4 (a)(1): Appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to investigate DNA evidence | Yes. 26(B) claim 2 (a). |
| Ground 4 (a)(2): Appellate counsel was ineffective for failing to argue that trial counsel failed to present witnesses that could exonerate Bridges | Yes. 26 (B) claim 2 (b). |
| Ground 4 (a)(3): Appellate counsel was ineffective for failing to argue that trial counsel failed to investigate the circumstantial evidence | Yes. 26 (B) claim 2 (c) |
| Ground 4 (a)(4): Appellate counsel was ineffective for failing to argue that trial counsel failed to argue claims related to pre-trial publicity | Yes. 26 (B) claim 2 (d). |
| Ground 4 (a)(5): Appellate counsel was ineffective for failing to argue that trial counsel failed to investigate police reports | Yes. 26 (B) claim 2 (e). |
| Ground 4 (a)(6): Appellate counsel was ineffective for failing to argue that trial counsel failed to present evidence of an alternative perpetrator | Yes. 26 (B) claim 2 (f). |
| Ground 4 (a)(7): Appellate counsel was ineffective for failing to argue that trial counsel failed to investigate phone records | Yes. 26 (B) claim 2 (h) |
| Ground 4 (a)(8): Appellate counsel was ineffective for failing to argue that trial counsel failed to file a motion for a private investigator | Yes. 26 (B) claim 2 (i) |

| | |
|---|---|
| Ground 4 (b) Appellate counsel was ineffective for failing to argue that the jury was not impartial because several transgender people were in the gallery during the trial | No. Bridges made no argument to the Ohio courts that the composition of the gallery affected the outcome of his trial. |
| Ground 4 (c) Appellate counsel was ineffective for failing to argue that pretrial publicity impacted Bridges's case | Yes. 26 (B) claim 3(a). |
| Ground 4 (d) Appellate counsel was ineffective for failing to argue that testimony should have been suppressed. | No. Bridges's argument is that testimony regarding clothing he burned was admitted without proper foundation. Bridges's arguments to the Ohio Courts regarding improper admission of evidence focused exclusively on hearsay arguments. |
| Ground 4 (e) Appellate counsel was ineffective for failing to argue that Bridges was denied his confrontation clause rights because of the admission of the alleged evidence. | No.  Bridges made no mention of a confrontation clause claim in his argument to the Ohio Supreme Court (his presentation of a confrontation clause argument to the Ohio Court of Appeals is insufficient to exhaust the claim). |
| Ground 4 (f) Appellate counsel was ineffective for failing to argue that testimony related to the weather on the date of the crime was false. | No. Bridges made no argument to the Ohio courts testimony regarding the weather testimony was false. |

As the State also observes, those sub-claims of Ground Four – 4(b), 4(d), 4(e), and 4(f) on the above table – which were not fairly presented to an Ohio court as part of the direct review process and cannot now be presented due to *res judicata*, must be dismissed as procedurally defaulted.[313] Accordingly, these sub-claims of Ground Four should be dismissed as procedurally defaulted.

---

[313] *Id.* at 37-38.

c.      *Grounds Five, Six, Seven, and Nine*

The State asserts that Bridges failed to present the following grounds to the Ohio

court of appeals: (1) Ground Five (ineffective assistance of trial counsel); (2) Ground Six

(denial of speedy trial); (3) Ground Seven (denial of fair trial due to witness and

prosecutorial misconduct); and (4) Ground Nine (denial of due process due to improper

admission of inflammatory photographs).[314]

As the State further observes, Bridges did raise these grounds to the Ohio court of

appeals in the consolidated appeal from the denial of his motion to post-conviction relief

and from the denial of his motion for acquittal under Ohio Criminal Rule 33, and then

subsequently attempted to raise them to the Supreme Court of Ohio.[315] In this posture, the

Ohio court of appeals found that because these claims could have been asserted in the

direct appeal, but were not, consideration of the claims was barred by *res judicata*.[316]

By not presenting his claims at the earliest possible opportunity, Bridges failed to

abide by the Ohio procedural requirement of *res judicata*. The Ohio appeals court

recognized that deficiency and relied on that rule in dismissing these claims. *Res judicata*

is recognized by the Sixth Circuit as an adequate and independent state law ground for the

---

[314] *Id.* at 38.

[315] *Id.* (citing record).

[316] *Id.* (citing record).

federal habeas court to decline to address the merits of a claim and so dismiss the claim as procedurally defaulted.[317]

Accordingly, Grounds Five, Six, Seven, and Nine are procedurally defaulted and should be dismissed unless Bridges can show a basis for overcoming the default.

### d.    Ground Eleven

In this ground, Bridges argues that he was denied a right to a meaningful appeal because the Ohio appellate court denied his motion to withdraw his appeal from the trial court's denial of a motion for a new trial. After addressing this claim on the merits, the court of appeals affirmed the decision of the trial court.[318] Although Bridges subsequently appealed the decision of the Ohio appeals court to the Supreme Court of Ohio, he did not include this claim in that appeal.[319]

As such, Bridges failed to submit this claim to one full round of Ohios established review procedure and may not now do so because the claim would be barred by *res judicata*. Ground Eleven is procedurally defaulted and so should be dismissed unless Bridge establishes a basis for overcoming the default.

For overcoming these procedural defaults, Bridges – who has filed a voluminous traverse[320]– appears to offer ineffective assistance of appellate counsel as a cause for

---

[317] *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2009).

[318] ECF No. 25 at 39 (citing record).

[319] *Id.* (citing record).

[320] ECF No. 33.

default of other claims.  As the State observes, Bridges argues in his Rule 26(B)

application that his appeals attorney was ineffective in not arguing: (1) ineffective

assistance of trial counsel – thus potentially excusing the default pertaining to Ground

Five; (2) admission of highly prejudicial evidence – thus potentially excusing the default

as to Ground Nine; and (3) prosecutorial misconduct – potentially excusing the default as

to Ground Seven.[321]

But, as the State further notes, in the Rule 26(B) application Bridges did not

present any potential excuses for the defaults as to Ground One (sufficiency of the

evidence related to the murder and felonious assault convictions), Ground Six (the speedy

trial claim), and that portion of Ground Seven concerning witness misconduct.[322]  Thus,

as the State points out, even with liberal construction of the filings in this case, Bridges

has not raised any basis for excusing the procedural default arising in Grounds One, Six,

and portions of Seven.[323]  Accordingly, these grounds – found procedurally defaulted

above – are without cause to excuse the default.

As to Grounds Five, Nine, and the remaining portion of Seven, Bridges's

arguments here can be read as claiming that these defaults may be excused by ineffective

---

[321] ECF No. 25 at 40.

[322] *Id.*

[323] *Id.*

assistance of counsel. The Ohio appeals court analyzed that argument in light of the

clearly established federal law of *Strickland v. Washington*:[324]

> {¶ 1} Andrey Bridges has filed a timely application for
> reopening pursuant to App.R. 26(B) relating to *State v. Bridges,*
> 8th Dist. Cuyahoga No. 100805, 2014–Ohio–4570, which
> affirmed his convictions for murder, felonious assault,
> tampering with evidence, and abuse of a corpse.[1] The state has
> opposed the application for reopening, and Bridges has filed a
> reply brief. For the following reasons, we deny the application
> for reopening.
>
> {¶ 2} In order to establish a claim of ineffective assistance of
> appellate counsel, Bridges must demonstrate that appellate
> counsel's performance was deficient and that, but for the
> deficient performance, the result of his appeal would have been
> different. *State v. Reed,* 74 Ohio St.3d 534, 1996–Ohio–21, 660
> N.E.2d 456. Specifically, Bridges must establish that "there is a
> genuine issue as to whether he was deprived of the effective
> assistance of counsel on appeal." App.R. 26(B)(5).
>
> {¶ 3} In *State v. Smith,* 95 Ohio St.3d 127, 2002–Ohio–1753,
> 766 N.E.2d 588, the Supreme Court of Ohio held that:
>
> Moreover, to justify reopening his appeal, [applicant] "bears the
> burden of establishing that there was a 'genuine issue' as to
> whether he has a 'colorable claim' of ineffective assistance of
> counsel on appeal." *State v. Spivey,* 84 Ohio St.3d at 25,
> 1998–Ohio–704, 701 N.E.2d 696.
>
> *Smith,* supra, at 7.
>
> {¶ 4} In addition, the Supreme Court of Ohio, in *State v. Spivey,*
> 84 Ohio St.3d 24, 1998–Ohio–704, 701 N.E.2d 696, held that:
>
> > In *State v. Reed* (1996), 74 Ohio St.3d 534, 535,
> > 1996 Ohio 21, 660 N.E.2d 456, 458, we held that

---

[324] *Strickland v. Washington*, 466 U.S. 668 (1984).

the two prong analysis found in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have been successful. Thus [applicant] bears the burden of establishing that there was a "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of counsel on appeal.

*Id.*

{¶ 5} It is also well settled that appellate counsel is not required to raise and argue assignments of error that are meritless. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel cannot be considered ineffective for failing to raise every conceivable assignment of error on appeal. *Jones, supra,* at 752; *State v. Gumm*, 73 Ohio St.3d 413, 1995–Ohio–24, 653 N.E.2d 253; *State v. Campbell*, 69 Ohio St.3d 38, 1994–Ohio–492, 630 N.E.2d 339.

{¶ 6} In *Strickland,* the United States Supreme Court also stated that a court's scrutiny of an attorney's work must be deferential. The court further stated that it is too tempting for a defendant-appellant to second-guess his attorney after conviction and appeal and that it would be all too easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. Accordingly, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Finally, the United States Supreme Court has firmly established that appellate counsel possesses the sound

discretion to decide which issues are the most fruitful arguments on appeal. Appellate counsel possesses the sound discretion to winnow out weaker arguments on appeal and to focus on one central issue or at most a few key issues. *Jones, supra,* at 752.

{¶ 7} Bridges's application sets forth four assigned errors in which he alleges that his appellate counsel was ineffective. Under the first assigned error in his application, Bridges simply summarizes the three assigned errors that follow it, which does not satisfy the burden for reopening. *See State v. Reeves,* 8th Dist. Cuyahoga No. 100560, 2015–Ohio–299, ¶ 6 (the failure to present any argument in support of an assigned error is insufficient to meet the burden of proving that appellate counsel was ineffective). In his reply brief, Bridges similarly sets forth numerous generalized ways in which he believes his appellate counsel was ineffective in connection with his first assigned error; however, he does not develop any arguments as to how he was prejudiced by these alleged deficiencies. For example, he contends his appellate counsel should have highlighted inconsistencies in the statements Quinones made to police compared to his trial testimony. Yet, appellate counsel expressly argued that the convictions were against the manifest weight of the evidence because Quinones's testimony was not credible. This court reviewed the entire record, including the credibility of Quinones's testimony, and found that the circumstantial evidence against Bridges was overwhelming. Bridges did not point to any specific inconsistencies that he believes should have been highlighted, and he has not explained how the outcome of the decision could have been different where the entire record was already considered by this court. *Bridges,* 8th Dist. Cuyahoga No. 100805, 2014–Ohio–4570, ¶ 83.

{¶ 8} Bridges claims his appellate counsel should have also raised the following arguments on appeal: that there was an actual conflict between himself and his trial

counsel, that trial counsel failed to secure needed experts, that trial counsel failed to object to improper and prejudicial prosecutorial remarks, that trial counsel failed to subpoena his son to testify and that counsel should have moved the court to issue a gag order "to prevent the newspaper from reporting the proceedings and/or criminal background of Bridges to the public." Bridges has not cited to any specific prosecutorial remarks he believes were improper or prejudicial. Further, many of the foregoing arguments require reference to material that is outside the trial court record and would be improper for appellate counsel to raise in the direct appeal.

{¶ 9} It is well settled that "appellate review is strictly limited to the record." *State v. Ellis,* 8th Dist. Cuyahoga No. 90844, 2009–Ohio–4359, ¶ 6, citing *The Warder, Bushnell & Glessner Co. v. Jacobs,* 58 Ohio St. 77, 50 N.E. 97 (1898) (other citations omitted); *State v. Corbin,* 8th Dist. Cuyahoga No. 82266, 2005–Ohio–4119, ¶ 7. A reviewing court cannot add material to the appellate record and then decide the appeal on the basis of the new material. *Id.,* citing *State v. Ishmail,* 54 Ohio St.2d 402, 377 N.E.2d 500 (1978). "Nor can the effectiveness of appellate counsel be judged by adding new matter to the record and then arguing that counsel should have raised these new issues revealed by the newly added material." *State v. Moore,* 93 Ohio St.3d 649, 650, 2001–Ohio–189, 758 N.E.2d 1130.

{¶ 10} Bridges has also failed to demonstrate any prejudice stemming from the alleged deficiencies. The first assigned error does not provide grounds for reopening the appeal pursuant to App.R. 26(B).

{¶ 11} In his second assignment of error, Bridges maintains that his appellate counsel should have asserted that the trial court erred by allowing media coverage of his case or his counsel should have moved for a change in venue. Bridges generally asserts that the publicity deprived him of an impartial jury but he has not

identified any factual basis in the record that would support this claim. It is within the court's discretion whether to grant or deny a motion for change of venue. *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 91. Bridges cannot establish that the trial court would have granted a motion for change of venue even if trial counsel had filed one. In order "to prove that a trial court erred by denying a change of venue, a defendant must show that at least one prospective juror was actually biased." *Id.* at ¶ 95. Bridges has not identified any specific juror that he claims was actually biased. "[I]n certain rare cases, pretrial publicity is so damaging that courts must presume prejudice even without a showing of actual bias." *Id.* at ¶ 100. A claim of presumed prejudice requires Bridges to make a clear and manifest showing of pervasive and prejudicial pretrial publicity. *Id.* at ¶ 101. There is no reasonable probability that appellate counsel would have prevailed on a claim of presumed prejudice based on this record. During voir dire, some jurors indicated that they had been exposed to some media coverage of the case. Each juror was separately questioned about their media exposure. In most instances, the juror's knowledge was very limited and consisted only of hearing that the body of a transgender individual had been found in a pond in Olmsted Township. None of the jurors reported having any knowledge of Bridges or his criminal history. None of the jurors had formed any opinion regarding Bridges's culpability. All of the jurors indicated that they could be fair and impartial and that they could set aside anything that they had learned from the pretrial publicity.

{¶ 12} There is no indication that Bridges received an unfair trial based on publicity. The second assigned error does not provide grounds for reopening the appeal.

{¶ 13} In his third assigned error, Bridges maintains that appellate counsel should have argued that trial counsel was ineffective in the following ways: failure to investigate the case, failure to consult with the client to

prepare the case, failure to file a suppression motion and a "motion for in camera inspection," failure to move for a private investigator prior to trial, and failure to file a notice of alibi. In his reply brief, Bridges contends that his trial counsel's alleged failure to timely investigate the case and to present relevant evidence affected a substantial right and prejudiced him. Appellate counsel could not have successfully raised any of these arguments in the direct appeal because they would require speculation or consideration of evidence that is outside of the record. *Ishmail, 54 Ohio St.2d 402, 377 N.E.2d 500*; *State v. Bays, 87 Ohio St.3d 15, 28, 1999–Ohio–216, 716 N.E.2d 1126* (prejudice from counsel's failure to employ investigative services is speculative where the record does not disclose what investigations trial counsel had performed or what information an investigator might have "turned up or that defense counsel in fact failed to obtain"). Accordingly, the third assigned error does not establish a colorable claim of ineffective assistance of appellate counsel for purposes of reopening the appeal.[325]

This decision of the Ohio court, which is explicitly based on the controlling federal law, found that Bridges had not shown any way that his counsel was deficient nor that any of counsel's purportedly ineffective actions prejudiced Bridges. That decision is entitled to AEDPA deference by the federal habeas court. Therefore, unless Bridges can overcome these procedural defaults by showing actual innocence, the defaults remain.

*e.    Actual innocence*

Actual innocence may serve to excuse a procedural default. Moreover, it is raised in Ground Thirteen of the present petition. In addition, a claim of actual innocence has

---

[325] ECF No. 25, Attachment 1 at 362-68.

already been dismissed as a free-standing claim in a separate prior order that preserved the argument of actual innocence as a potential basis for overcoming a procedural default.[326] Bridges  argues actual innocence in his traverse, and raised the argument in four of his filings in state court.[327]  The traverse,[328] summed up by Bridges in a five page filing,[329] purports to establish actual innocence by asserting, *inter alia*, that "someone else admitted to the crime,"[330] that witnesses against Bridges were "lying,"[331] and that the detectives "tampered with evidence."[332]  In addition, and as the State observes, Bridges filed with his state court motion for a new trial an affidavit signed by his son stating that "I know my father would never do anything like this,"[333] and a police report noting that an officer had been told by one person claiming that yet another person had told him that still two other persons were responsible for the crime.[334]

---

[326] ECF No. 21.

[327] ECF No. 25 at 43 (citing record).

[328] Bridges erroneously states that his traverse was not filed. ECF No. 36.  In fact, as the record shows, the traverse was filed (ECF No. 43) but because of its length the filing was a manual filing.  The Court has subsequently uploaded the entire filing and it is available on the ECF system.  *See* ECF No. 46.

[329] ECF No. 34.

[330] *Id.* at 2 (citing record).

[331] *Id.* (citing record).

[332] *Id.* at 5.

[333] ECF No. 25 at 43 (citing record).

[334] *Id.* at 44 (citing record).

Initially, as to the affidavit from Bridges's son, who was obviously not an eyewitness to the crime, such a belated statement from a family member without first-hand knowledge is inherently suspect and falls "far short of the sort of extraordinary showing – like exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – needed to establish actual innocence."[335] Without such a statement being subject to cross examination with the jury being able to assess credibility, the statement standing alone has little probative value, especially since the jury rejected the alibi defense it was given.

Further, as to the police report of another suspect, Bridges has admitted that this statement was turned over to his attorney before trial, and Bridges's counsel cross-examined the police officer about the statement, although the questioning was limited because the statement was hearsay.[336] Nevertheless, Bridges cannot now claim that this is "new evidence" or that it is "reliable."

Accordingly, Bridges has not presented any new, reliable evidence which would make it more likely than not that no reasonable juror would have found him guilty. Thus, for the reasons stated, Ground One, Five, Six, Seven, Nine, and Eleven of Bridges's petition should be dismissed as procedurally defaulted when nothing has been established that would overcome that default. Moreover, this analysis also shows that actual innocence cannot form the basis for overcoming any of Bridges's procedural defaults.

---

[335] *Freeman v. Trombley*, 483 Fed. Appx. 51, 60 (6th Cir. 2012).

[336] ECF No. 25 at 44 (citing record).

## 2.  *Non-cognizable claims*

### a.  *Grounds Eight and Twelve*

In Ground Eight, Bridges asserts that he was denied a right to a new trial without due process or equal protection. In Ground Twelve, he contends that he was denied his "fundamental right to redress in the courts" when his motion for a new trial was denied.[337]

As the State points out, Bridges is in both cases challenging the trial court's denial of his motion for a new trial and not his convictions themselves.[338]  In addition, both current claims are based on an assumed, unstated belief that Bridges has a constitutional right to a new trial.

It is well-settled that errors in state post-conviction proceedings are not grounds for federal habeas relief.[339]  Even if, as here, the underlying aim may be to overturn the conviction, federal habeas relief is not the proper means to challenge collateral matters, as opposed to "the underlying conviction giving rise to the petitioner's incarceration."[340]

Accordingly, for the reasons stated, Grounds Eight and Twelve should be dismissed as non-cognizable claims.

---

[337] ECF No. 1.

[338] ECF No. 25 at 47.

[339] *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

[340] *Kirby v. Dutton,* 794 F.2d 245, 247-48 (6th Cir. 1986).

b.      *Ground Ten*

In Ground Ten, Bridges alleges that his pre-trial bail was excessive and that the bail amount contributed to pre-trial media coverage that denied him the presumption of innocence.[341] He argues that because the jury knew of the allegedly excessive bail amount, they were prejudiced against him at trial.[342]

First, post-conviction claims of excessive pre-trial bail have been adjudged moot in the context of federal habeas proceedings because the petitioner is not in custody as a result of the supposedly excessive bail, but rather as a result of the subsequent conviction.[343] Further, Bridges's second argument is essentially an implied bias claim, inasmuch as he has not claimed, or shown, any actual jury bias. As such, the Sixth Circuit has held that an implied bias claim cannot be grounds for federal habeas relief.[344]

Accordingly, it is recommended that Ground Ten be found a non-cognizable claim and dismissed.

c.      *Ground Thirteen*

In Ground Thirteen, Bridges raises a stand-alone claim of actual innocence. As noted above, the court earlier denied a motion by Bridges to conduct discovery in support

---

[341] ECF No. 1.

[342] *Id.*

[343] *Ivey v. Duffey,* No. 1:13-cv-914, 2015 WL 5215972, at ** 4-5 (S.D. Ohio Sept. 8, 2015)(Merz, M.J.)(Report & Recommendation), *adopted,* 2015 WL 5835994 (S.D. Ohio Oct. 7, 2015).

[344] *Johnson v. Louma*, 425 F.3d 318, 326 (6th Cir. 2005).

of a claim of actual innocence.  As stated there, such a ground has never been recognized by the Supreme Court as a cognizable claim for habeas relief.[345]

Accordingly, and for the reasons stated, it is recommended that Ground Thirteen be found a non-cognizable claim and dismissed.

**3.    *Merits review***

*a.    Ground One*

In Ground One, Bridges contends that his convictions for murder and felonious assault are not supported by sufficient evidence.[346]  As discussed above, this claim should not be dismissed as procedurally defaulted.  Although the Ohio court was not directly presented with a sufficiency of the evidence argument as to these conviction, its analysis, recited above, was extensive.

Based on the facts recited by the Ohio appeals court, as understood in light of the requirements of Ohio law as to murder[347] and felonious assault,[348] the decision of the Ohio appeals court was not contrary to the clearly established federal law of *Jackson.* Specifically, Ground One should be denied on the merits because the Ohio court decision was not contrary to clearly established federal law in that, after viewing all the evidence and reasonable inferences in a light most favorable to the prosecution, a rational juror

---

[345] ECF No. 45.

[346] ECF No. 1.

[347] Ohio Rev. Code § 2903.02(A).

[348] Ohio Rev. Code § 2903.11(A)(1).

could have found all the elements of these two offenses beyond a reasonable doubt and so convicted Bridges.

b.    *Grounds Two and Three*

The Ohio appeals court reviewed Bridges's convictions for tampering with the evidence and for abuse of a corpse under the applicable federal constitutional standard for sufficiency of the evidence stated above. The court found:

> {¶ 54} In his second and third assignments of error, Bridges claims that the state failed to present sufficient evidence for his convictions of tampering with evidence and offenses against a human corpse.

> {¶ 55} " '[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1433 (6th Ed.1990). When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

> A. *Tampering with Evidence*

> {¶ 56} Bridges argues that the evidence was not sufficient to support his conviction for tampering with evidence. He contends that even assuming for the sake of argument that there was sufficient circumstantial evidence to support a conviction for murder, the fact that he was seen burning material in front of his residence, or that he "allegedly cleaned up the apartment according to a single witness," is not sufficient evidence to convict him of tampering with evidence beyond a reasonable

doubt. He asserts that "the law does not allow the trier of fact to convict [him] on mere absence of evidence."

{¶ 57} Tampering with evidence under R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶ 58} Bridges's conviction is not just based on the absence of evidence, as he claims. Quinones and King testified that when they arrived at Quinones's apartment on January 5, 2013, Bridges was standing outside at a fire pit burning what appeared to be carpet material and jean material. This evidence, coupled with the fact that Acoff's body was found in the pond without clothing on the lower portion of his body and the fact that Acoff's blood was found in the bedroom of the apartment (albeit one drop of blood), was sufficient evidence to convict Bridges of tampering with evidence beyond a reasonable doubt.

{¶ 59} Further, Quinones's testimony that Bridges cleaned up blood from the scene, as well as Bridges's own statements to police that he cleaned up blood from the scene (even if he was claiming that it was only his own blood), also supported a tampering with evidence conviction. Again, Acoff's blood was found in Bridges's apartment.

{¶ 60} Accordingly, the evidence was sufficient to convict Bridges of tampering with evidence.

B. *Abuse of a Corpse*

{¶ 61} Bridges argues that the mere concealment of the body in the pond was not sufficient to convict him of abuse of a corpse. He further maintains that the fact that Acoff had been stabbed would not amount to abuse of a corpse because those facts supported the homicide, which he claims is separate and apart from abuse of a corpse.

{¶ 62} Abuse of a corpse under R.C. 2927.01(B) provides that "[n]o person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities.

{¶ 63} In *State v. Nobles,* 106 Ohio App.3d 246, 665 N.E.2d 1137 (2d Dist.1995), the defendant killed her son, put his body in a garbage bag, and kept it in a closet for several days before disposing of it in a dumpster. The Second District explained this was sufficient evidence of gross abuse of a corpse, holding that "gross abuse of a corpse can apparently be found in any attempt to conceal a body." *Id.* at 267, 665 N.E.2d 1137, citing *State v. Benge,* 12th Dist. Butler No. CA93–06–116, 1994 Ohio App. LEXIS 5419, 1994 WL 673126 (Dec. 5, 1994) (victim found at the bottom of a river with a 35–pound piece of concrete on her body); *State v. Eades,* 2d Dist. Montgomery No. 13807, 1994 Ohio App. LEXIS 653, 1994 WL 53834 (Feb. 25, 1994) (wrapped the body in a blanket, drove to another county and disposed of the body in "some brush"); *State v. Riggs,* 4th Dist. Meigs No. 503506, 1993 Ohio App. LEXIS 5063, 1993 WL 405491 (Oct. 4, 1993) (dumped the victim's body over a hill); *State v. Wolf,* 11th Dist. Lake No. 91–L–096, 1992 Ohio App. LEXIS 6185, 1992 WL 366985 (Dec. 11, 1992) (victim's body placed in plastic bags and dumped in a vacant lot); *State v. Frazier,* 5th Dist. Fairfield No. 13–CA–91, 1991 Ohio App. LEXIS 6220, 1991 WL 299524 (Dec. 18, 1991) (victim's body disposed of by weighting it with a concrete block and throwing it into a creek); and *State v. Hoeflich,* 5th Dist. Morrow No. CA–689, 1989 Ohio App. LEXIS 2751, 1989 WL 75673 (June 22, 1989) (body placed in the hatchback of a car and later buried).

{¶ 64} The state presented circumstantial evidence that after Bridges killed Acoff, he tied a metal pipe and cinder block to Acoff's body and placed his body in the pond behind the apartment building. Bridges's treatment of Acoff's body was sufficient to outrage reasonable community sensibilities.[349]

---

[349] ECF No. 25, Attachment 1 at 105-108.

-74-

These decisions of the Ohio appeals court were not unreasonable applications of the clearly established federal law of sufficiency of the evidence, and, therefore, Grounds Two and Three should be denied on the merits.

c.      *Ground 4(a)(1), 4(a)(6),4(a)(7), 4(a)(8), 4(c), and 4(d)*

The Ohio appeals court discussed these sub-claims of Ground Four – all of which were not procedurally defaulted above – in considering Bridges's motion to re-open the appeal under Ohio App. Rule 26(B). The court found the following as to these multiple claims of ineffective assistance of appellate counsel:

> {¶ 13} In his third assigned error, Bridges maintains that appellate counsel should have argued that trial counsel was ineffective in the following ways: failure to investigate the case, failure to consult with the client to prepare the case, failure to file a suppression motion and a "motion for in camera inspection," failure to move for a private investigator prior to trial, and failure to file a notice of alibi. In his reply brief, Bridges contends that his trial counsel's alleged failure to timely investigate the case and to present relevant evidence affected a substantial right and prejudiced him. Appellate counsel could not have successfully raised any of these arguments in the direct appeal because they would require speculation or consideration of evidence that is outside of the record. *Ishmail,* 54 Ohio St.2d 402, 377 N.E.2d 500; *State v. Bays,* 87 Ohio St.3d 15, 28, 1999–Ohio–216, 716 N.E.2d 1126 (prejudice from counsel's failure to employ investigative services is speculative where the record does not disclose what investigations trial counsel had performed or what information an investigator might have "turned up or that defense counsel in fact failed to obtain"). Accordingly, the third assigned error does not establish a colorable claim of ineffective assistance of appellate counsel for purposes of reopening the appeal.
>
> {¶ 14} In his application, Bridges appears to be arguing under his fourth assigned error that his appellate counsel should have

-75-

presented an ineffective assistance of trial counsel argument based on the failure to file a motion to suppress. Bridges failed in his application to identify the specific testimony or evidence that he believes was improperly admitted. In his reply brief, Bridges refers to "the admission of the alleged statements of Jason Quinones through the testimony of an investigating officer violated his right to confront witnesses against him * * *." However, Quinones was subject to cross-examination at trial. In any case, Bridges has failed to direct this court to any portion of the record or trial where he contends his trial counsel should have objected to the admission of evidence or where any specific testimony or evidence was improperly introduced to his prejudice. Accordingly, he has failed to demonstrate any genuine issue of ineffective assistance of appellate counsel based on the fourth assigned error.[350]

The Ohio court's analysis here both shows that Bridges did not identify any specific action by his appellate counsel that may be found to be constitutionally deficient, and also points out that if any such action could be found, Bridges was not prejudiced by that behavior. Because the decision of the Ohio appeals court was not an unreasonable application of the clearly established federal law concerning ineffective assistance of counsel, these sub-grounds of Ground Four should be denied on the merits.

d. *Ground Four 4(a)(2) - 4(a)(5)*

The analysis of the Ohio appeals court concerning the merits of these claims is set forth above in the discussion of whether ineffective assistance of counsel could serve as a cause to excuse procedural default. The reasons given there as to why Bridges had not shown ineffective assistance of counsel as to overcome procedural default also show that the

---

[350] *Id.* at 368-69.

decision of the Ohio court was not an unreasonable application of clearly established federal law as to the merits of the ineffective assistance claims themselves.

## Conclusion

For the reasons stated, the *pro se* petition of Andrey Bridges should be dismissed in part and denied in part as is more fully set forth above.

Dated: August 9, 2018                    s/ William H. Baughman, Jr.
                                         United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[351]

---

[351] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).